**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

TREVOR JONES,

                            Plaintiff,

-against-

SKY BLUE POOLS, LLC, CHARLES DECKER, and
GEORGE LARSON, Individually,

                            Defendants.

------------------------------------------------------------------X

Docket No.

**COMPLAINT**

*PLAINTIFF DEMANDS A TRIAL BY JURY*

Plaintiff TREVOR JONES, by and through his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against SKY BLUE POOLS, LLC, CHARLES DECKER and GEORGE LARSON (together, "Defendants") alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

### NATURE OF THE CASE

1. This is a civil action based upon Defendants' violations of Plaintiff's rights guaranteed to him by: (i) the race discrimination provisions of the **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) the race discrimination provisions of **42 U.S.C.** § 1981 ("Section 1981"); (iii) the race discrimination provisions of the **New York State Human Rights Law**, New York State Executive Law, § 296 et seq. ("NYSHRL"); (iv) the race discrimination provisions of the **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 et seq. ("SCHRL"); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks redress for the injuries he has suffered as a result of his employer's **discrimination** solely on the basis of his race (Black).

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

7. Plaintiff received a Notice of Right to Sue from the EEOC dated [date], with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

8. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

9. Plaintiff TREVOR JONES ("Plaintiff"), is a Black man and a resident of the State of New York, Suffolk County. At all relevant times herein, Plaintiff was an employee of Defendant SKY BLUE POOLS.

10. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by state and federal laws.

11. At all relevant times herein, Defendant SKY BLUE POOLS, LLC ("SKY BLUE") was and is a domestic limited liability company located at 94 North Industry Court, Deer Park, New York 11729.

12. At all relevant times herein, Defendant CHARLES DECKER ("DECKER") is an owner of

Defendant SKY BLUE. In his role as an owner of Defendant SKY BLUE, Defendant DECKER directly supervised certain employees, including Plaintiff. Additionally, Defendant DECKER had the authority to affect the terms and conditions of Plaintiff's employment.

13. At all relevant times herein, Defendant GEORGE LARSON ("LARSON") directly supervised certain employees, including Plaintiff. Additionally, Defendant LARSON had the authority to affect the terms and conditions of Plaintiff's employment. In or around 2018, Defendant LARSON became a co-owner of Defendant SKY BLUE.

14. At all relevant times herein, Defendant SKY BLUE "employs" fifteen or more "employees," and is thus an "employer" within the meaning of Title VII, Section 1981, the NYSHRL, and the SCHRL, while Defendants DECKER and LARSON are an "employers" and "persons" within the meaning of Title VII, Section 1981, the NYSHRL, and the SCHRL.

## FACTUAL ALLEGATIONS

15. Defendant SKY BLUE is a business that installs, repairs, and maintains swimming pools throughout Nassau and Suffolk Counties in New York.

16. In or about April of 2011, Defendant SKY BLUE hired Plaintiff as a Helper earning $17 per hour. Plaintiff's rate of pay at the time of his termination was $18 per hour.

17. As a Helper, Plaintiff's duties included opening and closing pools, vacuuming pools, checking pool chemicals and installing pool covers.

18. Plaintiff worked for Defendant SKY BLUE seasonally each year. The season ran from March or April to late October or early November.

19. When Plaintiff arrived at Defendant SKY BLUE's warehouse on his first day of work, he was greeted by another Black employee, Antoine Hawkins ("Hawkins"). It was about 6:30

3

in the morning and Hawkins was waiting outside for the warehouse to open. Plaintiff inquired as to how long Hawkins had been working for Defendant SKY BLUE and why he did not have a key to enter the warehouse. Hawkins responded, in sum and substance, "You see our skin color. Sky Blue Pools not going for that."

20. Hawkins told Plaintiff that, including Plaintiff, there were only three Black employees of Defendant SKY BLUE and warned him that he should expect to hear Defendant LARSON make racist remarks and jokes.

21. One week later, Plaintiff heard Defendant LARSON make jokes directed towards Hawkins about race-based chattel slavery. Plaintiff was shocked but, about one month later, it became clear that racist jokes would be an ongoing occurrence with Defendant LARSON.

22. Throughout his employment with Defendant SKY BLUE, Defendant LARSON referred to Plaintiff and his Black co-workers as "gorilla" and "monkey" on a daily basis.

23. At the time that President Barack Obama was serving as President of the United States, Thomas Decker ("T. Decker"), Co-Owner of Defendant SKY BLUE and the brother of Defendant DECKER, banned Obama coffee mugs, hats, and decals. T. Decker, Defendant DECKER, Defendant LARSON, Chris Decker ("C. Decker"), Head Mechanic and younger brother of Defendant DECKER would force Plaintiff to listen to a radio station stating that a Black man should not be President of the United States while traveling to job sites.

24. In April 2012, Plaintiff witnessed Defendant DECKER humiliating a Latino employee in front of other employees of Defendant SKY BLUE by screaming at him and asking him if he could read and comprehend English.

25. In April 2014, after three seasons of working with Defendant SKY BLUE, Plaintiff asked for a promotion and raise. He also asked to attend training classes in Florida. Plaintiff's requests were denied. Similarly situated employees of Defendant SKY BLUE who are not

4

Black had received promotions and raises and had been given the opportunity to attend training classes in Florida.

26. At the start of the season, Defendant SKY BLUE gave all employees their own tool bags for a deposit of $50. At the end of the season, employees were expected to return the tool bags to receive their $50 deposit.

27. During that season, Plaintiff called Jaclyn Wiener ("Weiner"), Office Manager of Defendant SKY BLUE, and said that he wanted to return his tool bag because he needed his $50 deposit to pay his bills until the next payday. T. Decker later called Plaintiff while he was working with C. Decker and berated him for quitting. Apparently, Wiener had miscommunicated to T. Decker that Plaintiff was quitting. Nevertheless, T. Decker cursed Plaintiff and fired him.

28. In April 2015, Defendant DECKER called Plaintiff to ask him to return to work for Defendant SKY BLUE saying that T. Decker was no longer employed with the company. Plaintiff asked for a pay increase to $18 per hour and Defendant DECKER agreed.

29. Shortly thereafter Plaintiff resumed working for Defendant SKY BLUE, but he did not receive his pay increase as agreed. He continued to be paid at a rate of $17 per hour.

30. Upon information and belief, a non-Black employee named Johvany, who had only recently begun working for Defendant SKY BLUE, was paid at a significantly higher rate than Plaintiff despite having no experience with Defendant SKY BLUE's business and being unable to speak English.

31. Later that year, a white employee named Charlie V. began working for Defendant SKY BLUE.

32. Charlie V. would call Plaintiff, Hawkins, and Cheron Caravana ("Caravana"), another Black employee of Defendant SKY BLUE, "niggas." When Plaintiff confronted Charlie

5

V. about his use of the word "nigga" and told him he did not have the right to say it, Charlie V. responded by saying, "It's not like that, my nigga" and walked away.

33. In April 2016, Plaintiff had yet to receive a raise, promotion, or training for the new season. When Plaintiff asked Defendant LARSON, yet again, for a raise, he denied Plaintiff's request and told him to be Rosa Parks for the day and sit in the back of the truck where there are no seats, merely tools and materials, including chemicals.

34. In April 2017, Plaintiff suffered from poor health. Despite advising Wiener about his health issues, Plaintiff was forced to work in rainy and cold weather. Eventually, Plaintiff contracted walking pneumonia. When Plaintiff informed Wiener that he had walking pneumonia and showed her his hospital discharge, Wiener dismissed Plaintiff's illness saying, "Don't worry. If it's like the flu, I get it every year."

35. In April 2018, Plaintiff began work for the new season at a rate of $18 per hour and with no promotion or training classes. Plaintiff continued to be subjected to racist slurs and jokes. Charlie V. continued his use of the word "niggas" and Defendant LARSON continued to refer to Plaintiff and other Black employees as "gorilla" and "monkey." At one point, Defendant LARSON asked Plaintiff what he wanted for lunch and said, "I know you Black people like watermelon and chicken." Defendant LARSON referring to Plaintiff would also say, "Want my little Black buddy today."

36. In April 2019, Plaintiff broke his left hand rendering him unable to work until later in the season. When Plaintiff was prepared to return to work, he contacted Defendant SKY BLUE. A few weeks later, he was called to return to work. Upon resuming work with Defendant SKY BLUE, Plaintiff continued to be underpaid compared to his white counterparts. Plaintiff received no promotion or training while his white counterparts received both. In fact, Defendant SKY BLUE promoted Charlie V. to leak detection

specialist and gave him a raise despite him having the least experience and seniority of any employees of Defendant SKY BLUE.

37. Plaintiff, Hawkins, and Caravana, the only Black employees of Defendant SKY BLUE, were all overlooked for the promotion to the role of leak detection specialist.

38. In April 2020, Plaintiff returned to work for Defendant SKY BLUE with still no promotion, raise, or training. Due to the COVID-19 pandemic, Defendant SKY BLUE provided Plaintiff with a spray bottle that was ostensibly hand sanitizer. Larson later told Plaintiff that it was adhesive spray. Shortly after using it, Plaintiff became ill for three weeks. Plaintiff's symptoms included severe stomach aches and diarrhea.

39. In or around mid-July 2020, Defendant DECKER called Plaintiff and asked why he was not working. Plaintiff told Defendant DECKER that he had not been scheduled to work Defendant DECKER responded by yelling and cursing at Plaintiff. Defendant DECKER said to Plaintiff, "You are not tough. I will break you in half. You can't handle me, nigger. I don't need you."

40. After hanging up, Defendant DECKER called Plaintiff back and told him to come into work the following Monday. Frightened by Defendant DECKER's threats and outburst, Plaintiff declined to return to work for Defendant SKY BLUE again.

41. Throughout his employment with Defendant SKY BLUE, Plaintiff was denied benefits conferred upon white employees, including raises, bonuses, and commissions from referring new customers.

42. Plaintiff was regularly given more strenuous job duties than his white counterparts.

43. To cover up the racial disparity in pay among its employees, Defendant SKY BLUE directed its employees not to discuss their pay with co-workers.

44. As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

45. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

47. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

48. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*
**(against Defendant SKY BLUE)**

49. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

50. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.]

51. As described above, Defendant SKY BLUE discriminated against Plaintiff on the basis of his race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying,

and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff and disparate treatment based on his race.

52. As a result of the unlawful discriminatory conduct of Defendant SKY BLUE in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

53. The unlawful discriminatory actions of Defendant SKY BLUE constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
*Race Discrimination in Violation of Section 1981*
**(against all Defendants)**

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. 42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

56. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

57. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to his race.

## THIRD CAUSE OF ACTION
*Race Discrimination in Violation of the NYSHRL*
**(against all Defendants)**

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. New York State Executive Law §296(1)(a) provides that:

    It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

60. As described above, Defendants discriminated against Plaintiff on the basis of his race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff and disparate treatment based on his race.

61. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

62. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

63. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton

violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
*Race Discrimination in Violation of SCHRL*
**(against all Defendants)**

64. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

66. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived **race**, color, creed, age, national origin, alienage or citizenship status, gender, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

67. As described above, Defendants discriminated against Plaintiff on the basis of his race in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

68. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

69. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## JURY DEMAND

70. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL, and SCHRL in that Defendants discriminated against Plaintiff on the basis of his race;

B. Restraining Defendants from any retaliation against Plaintiff for participating in any form in this litigation;

C. Declaring preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

D. Awarding damages to Plaintiff for all damages resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
March __, 2021

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

By:    /s/ Joshua Friedman_____
        Joshua Friedman, Esq.
        Joseph Myers, Esq.
        *Attorneys for Plaintiff*
        45 Broadway, Suite 430
        New York, New York 10006
        T: (212) 248-7431
        F: (212) 901-2107
        jfriedman@tpglaws.com
        jmyers@tpglaws.com